456 P.2d 206

STATE of New Mexico, Plaintiff-Appellee,

v.

Harold HOVEY, Eddie Hovey, and Perry Chavez, Defendants-Appellants.

No. 299.

Court of Appeals of New Mexico.

June 6, 1969.

James I. Bartholomew, Albuquerque, for appellants.

374

James A. Maloney, Atty. Gen., William F. Riordan, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

WOOD, Judge.

The appeal in these burglary convictions presents questions concerning: (1) circumstantial evidence, (2) competency to stand trial and (3) cross-examination.

*Circumstantial evidence.*

■ State v. Easterwood, 68 N.M. 464, 362 P.2d 997 (1961) states:

"Where circumstantial evidence alone is relied upon for a conviction such evidence must be incompatible with the innocence of the accused upon any rational theory and incapable of explanation upon any reasonable hypothesis of the defendant's innocence. * * *

* * * * * *

"It is not enough that the testimony raise a strong suspicion of guilt. It must exclude every reasonable hypothesis other than the guilt of the defendant. * * *"

State v. Campos, 79 N.M. 611, 447 P.2d 20 (1968); State v. Seal, 75 N.M. 608, 409 P.2d 128 (1965).

■ The three defendants claim the evidence is circumstantial and that it does no more than raise a suspicion as to their guilt. Accordingly, they claim their motion to dismiss at the end of the State's case should have been granted.

The evidence is not entirely circumstantial as to Eddie Hovey. One of the investigating officers testified that Eddie Hovey was the person he saw come out of the burglarized grocery store. The evidence is circumstantial as to Harold Hovey and Perry Chavez.

There is no question that a burglary occurred. The grocery store was entered sometime around 3:45 a. m. without the owner's permission. Entry was by breaking the glass in a locked door. Eighteen cartons of cigarettes and a trash container were stolen.

A neighbor had heard breaking glass and telephoned the police. The police arrived in "less than five minutes." Almost immediately upon arrival of the police, a car was seen about half a block from the burglarized store. The car was in an alley, driving away with lights off. The car was stopped; the three defendants were in the car.

The neighbor had seen a person running from the scene. This person was dressed in a light top and dark trousers. When apprehended, Perry Chavez was wearing a pale sport shirt and dark pants. He had a fresh cut on his arm which had bled. There was blood on his sport shirt and on the glass at the store.

Two of the eighteen cartons of cigarettes were found in front of the store. When Harold Hovey was apprehended, the trash container, containing the remaining cartons, was next to him on the back seat of the car.

This evidence excludes every reasonable hypothesis other than the guilt of Perry Chavez and Harold Hovey. State v. Roybal, 76 N.M. 337, 414 P.2d 850 (1966). See State v. Flores, 76 N.M. 134, 412 P.2d 560 (1966); State v. Romero, 67 N.M. 82, 352 P.2d 781 (1960); compare State v. Hinojos, 78 N.M. 32, 427 P.2d 683 (Ct.App. 1967).

*Competency to stand trial.*

Section 41–13–3.1, N.M.S.A.1953 (Repl. Vol. 6, Supp.1967) states in part:

"Whenever it appears, * * * at any stage of a criminal proceeding that there is a question as to the mental competency of a defendant to stand trial, any further proceeding in the cause shall be suspended until the court, without a jury, determines this issue. * * *"

Section 41–13–3.2, N.M.S.A.1953 (Repl. Vol. 6, Supp.1967) states in part:

"Upon motion of any defendant, the court shall order a mental examination of the defendant before making any determination of competency under * * * 41–13–3.1. * * *."

Perry Chavez took the stand in his own defense. At the completion of his testimony, his counsel moved that further proceedings in the trial be suspended and that Chavez be given a psychiatric examination. His counsel was "wondering" whether Chavez was competent to stand trial, and wanted the matter to be "* * * further investigated at this time."

Prior to the enactment of the above quoted statutes, case law set forth how the issue of competency to stand trial was to be raised. State v. Folk, 56 N.M. 583, 247 P.2d 165 (1952) states:

"* * * the issue must be raised in good faith and supported by a showing sufficient to create a reasonable doubt as to the sanity of an accused."

State v. Roybal, supra; State v. Upton, 60 N.M. 205, 290 P.2d 440 (1955).

This rule placed no affirmative duty upon the trial court to order a mental examination before determining the issue of competency. The trial court determined the issue on the evidence presented and the burden of proof was upon the defendant. See State v. Ortega, 77 N.M. 7, 419 P.2d 219 (1966); State v. Roybal, supra; State v. Velasquez, 76 N.M. 49, 412 P.2d 4 (1966), cert. denied Velasquez v. New Mexico, 385 U.S. 867, 87 S.Ct. 131, 17 L. Ed.2d 95 (1966).

Chavez contends that if a defendant moves for a mental examination, § 41–13–3.2, supra, makes it mandatory for the trial court to order such an examination before determining defendant's competency. We assume, but do not decide, that this contention is correct. Such an examination is not necessary unless "* * * there is a question as to the mental capacity of a defendant to stand trial, * * *." Section 41–13–3.1, supra.

Chavez asserts that under our statutes the question of competency exists once a motion is made for a mental examination and the motion is made in good faith. He relies on Wear v. United States, 94 U.S. App.D.C. 325, 218 F.2d 24 (1954). That case considered 18 U.S.C. § 4244 which re-

quired a showing of reasonable cause for the belief that the accused was not competent to stand trial. *Wear* held the trial court could not weigh the evidence to determine whether there was a reasonable cause for the belief. Rather, "* * * a motion on behalf of an accused for a mental examination, made in good faith and not frivolous, must be granted under the statute. * * *" See Kelley v. United States, 95 U.S.App.D.C. 267, 221 F.2d 822 (1954). This seems to be a minority view.

"* * * 18 U.S.C.A. § 4244 contemplates that a motion on behalf of an accused for a judicial determination of mental competency to stand trial shall set forth the ground for belief that such mental capacity is lacking. The oral motion failed to do this, * * * no showing was made which required that a mental examination be ordered. * * *" Behrens v. United States, 312 F.2d 223 (7th Cir. 1962), aff'd 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963). When the motion does not set forth grounds for reasonable cause to believe the defendant may be insane or mentally incompetent, the motion can be denied. United States v. Wilkins, 334 F.2d 698 (6th Cir. 1964). "* * * [T]he statute requires such an examination only when it is shown that there is reasonable cause to believe that an accused may be presently insane or otherwise mentally incompetent. * * *" Manning v. United States, 371 F.2d 811 (10th Cir. 1967), cert. denied 387 U.S. 924, 87 S.Ct. 2041, 18 L. Ed.2d 980 (1967).

Section 41–13–3.1, supra, requires there to be a "question" as to the accused's capacity to stand trial. The "question" is not raised by an assertion of that issue, even though the assertion is in good faith. As in the similar federal statute, there must be a showing of reasonable cause for the belief that an accused is not competent to stand trial. Manning v. United States, supra.

Counsel for Chavez "wondered" about Chavez's competency to stand trial and wanted further investigation. This is

based on Chavez's appearance on the stand and his testimony. Counsel asserts that Chavez was confused "* * * as to the terms and purpose of his oath, * * *" and "* * * seemed to be unable to understand questions posed by Counsel, even when they were interpreted into Spanish. * * *"

The record does not show that Chavez was confused concerning the oath. It does show that the judge did not understand his answer when he was asked to swear to testify as to the truth. Not understanding the answer, the judge repeated the oath and Chavez stated "yes" as to whether he swore to tell the truth. The record shows Chavez had some difficulty in understanding questions, but once understood his answers were clear.

Thus, the "wondering" about Chavez's mental capacity is based solely on counsel's impression. The impression of counsel in this case was not reasonable cause for a belief that Chavez was incompetent to stand trial. Lebron v. United States, 97 U.S.App.D.C. 133, 229 F.2d 16 (1955), cert. denied 351 U.S. 974, 76 S.Ct. 1035, 100 L. Ed. 1492 (1956).

Further, counsel never asserted that he believed his client was incompetent to stand trial. He only wondered about it. And in this "wondering", counsel only asked for further investigation. No claim was made that Chavez did not understand the nature of the charge against him or could not assist counsel in the preparation and defense of the case. See United States v. Wilkins, supra; State v. Upton, supra.

No "question" was presented concerning the mental capacity of Chavez to stand trial. The trial court did not err in denying the motion for a psychiatric examination.

*Cross-examination.*

Harold Hovey took the stand in his own defense. He testified that he had been drinking on the day of the burglary. Asked specific questions concerning the burglary, he could not remember.

On cross-examination, he was questioned concerning details of the burglary and his arrest. He did not remember. Then:

"Q. Do you remember talking to the detectives the next day about the grocery store burglary?

"A. Yes, this was—I talked to them in the afternoon, I think it was.

"Q. Why didn't you tell them the same story as you are telling now?

"A. I didn't tell them no story at all.

"Q. That is right. Why not?

"MR. CRONIN: Your Honor, I object to that question on the basis that he was advised of his constitutional rights and could exercise them.

"THE COURT: Oh, I guess that he could say that.

"A Just refuse to talk.

"THE COURT: Overruled, go ahead.

"A Yes, you don't have to tell the detective anything, that is a violating of your constitutional rights."

The witness went on to explain that the detective told him he didn't have to say anything. Also, that he knew this even prior to the detective's explanation.

No implication of guilt can be drawn because a defendant invokes his privilege against self-incrimination. Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). There are circumstances where a witness may properly be cross-examined concerning the fact that he has invoked his privilege against self-incrimination. United States v. Sing Kee, 250 F.2d 236 (2nd Cir. 1957), cert. denied 355 U.S. 954, 78 S.Ct. 538, 2 L.Ed.2d 530 (1958); People v. Ashby, 8 N.Y.2d 238, 203 N.Y.S.2d 854, 168 N.E.2d 672 (1960). Generally, however, where the witness is the defendant, it is improper to cross-examine him concerning his invocation of the privilege. Whatever probative value such cross-examination has on defendant's credibility is outweighed by the danger that the jury may equate invocation of the privilege with guilt. Grunewald v. United States, supra; United States v.

Gross, 276 F.2d 816 (2nd Cir. 1960), cert. denied 363 U.S. 831, 80 S.Ct. 1602, 4 L. Ed.2d 1525 (1960); United States v. Tomaiolo, 249 F.2d 683 (2nd Cir. 1957); Travis v. United States, 247 F.2d 130 (10th Cir. 1957), cert. denied 363 U.S. 801, 80 S. Ct. 1235, 4 L.Ed.2d 1146 (1960); People v. Ashby, supra.

 Harold Hovey asserts that these principles apply in this case; that because the State, on cross-examination, asked him why he failed to make a statement to the police he is entitled to a new trial. We agree that the question was improper. There was no implication of guilt by the failure of this defendant to make a statement. Grunewald v. United States, supra. No question of "confession by silence" was raised by the defendant's failure to talk. See United States ex rel. Smith v. Brierly, 267 F.Supp. 274 (D.C.E.D.Pa.1967), aff'd, 384 F.2d 992 (3rd Cir. 1967). This defendant's trial testimony was not to the effect that he was innocent; only that he did not remember the events in question. The failure to talk was not inconsistent with defendant's trial testimony; no issue as to inconsistent statements was raised by the failure to make a statement. See United States v. Gross, supra; United States v. Tomaiolo, supra; Travis v. United States, supra.

Although the question was improper, it did not deprive Harold Hovey of a fair trial. Defendant's failure to talk was, in part, the result of the detective's advice that he need not do so. With this explanation, the failure to talk was not bound to affect the jury's estimate of his credibility (that he did not remember). See United States v. Tomaiolo, supra.

The failure to talk, on the detective's advice, is not related to any details of the crime. The question (as to why he did not make a statement) arose in relation to defendant's testimony that he did not remember the events in question. Coupling the answers at trial with the prior failure to make a statement, the jury would not likely improperly infer facts directly bearing on defendant's participation in the crime. United States v. Sing Kee, supra. The circumstances here show no danger that the jury might equate the failure to make a statement with guilt. See Grunewald v. United States, supra; United States v. Gross, supra. The error in asking the improper question does not require a reversal. Section 21–2–1(17) (10), N.M.S.A.1953.

The judgments and sentences are affirmed.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.